# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM LEE GRAY,<br><br>                    Petitioner,<br><br>                    v.<br><br>KIM HOLLAND, Warden,<br><br>                    Respondent. | Case No. CV 14-0524 PA (RAO)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.    INTRODUCTION

In 2010, a Riverside jury convicted Petitioner of various offenses arising from charges that he molested five minor girls.  Specifically, Petitioner was convicted of three counts of committing lewd acts upon a child under the age of 14 (California Penal Code § 288(a); Counts 1, 9 and 10) [1]; one count of inducing a

---

[1] Further undesignated statutory references are to the California Penal Code.

minor to engage in sexual conduct for a photograph (§ 311.4(c); Count 2); committing a lewd act by force on a child under the age of 14 (§ 288(b); Count 3); misdemeanor false imprisonment (§ 236; Count 4); misdemeanor annoying or molesting of a child (§ 647.6(a); count 6); possession of child pornography (§ 311.11(a); Count 7); and attempting a lewd and lascivious act upon a child under the age of 14 (§§ 664/288(a); Count 8).[2]

The trial court sentenced Petitioner to a determinate term of four years and four months, plus an indeterminate term of 45 years to life, which consisted, in part, of three consecutive 15-year-to-life sentences on Counts 1, 3, and 9.  (*See* Lodg. No. 10 at 2; 2CT 497-99; 4RT 669-90.)

II.     **FACTUAL BACKGROUND**

On May 22, 2008, Petitioner went to visit his brother, Daniel Gray, at Daniel's house in Beaumont, California.  Petitioner was bringing a birthday gift to Daniel's eight-year-old daughter, Jane Doe MG, Petitioner's niece.  Petitioner, Daniel, and Jane Doe MG were watching television in the living room during the visit.  After Daniel left the room and Petitioner was alone with MG, Petitioner began taking photographs of her.  He instructed MG to lift up her blouse and he took a picture.  MG was uncomfortable and did not want Petitioner to see her chest.  She tried to cover her chest with her hand, but Petitioner pushed it away.

Later that night, after Petitioner had left Daniel's home, MG complained to her parents, Daniel and Beatrice, about Petitioner's actions.  Beatrice then called the Beaumont Police Department and spoke with Officer Liam Doyle, and she told him that she was upset about Petitioner's actions with her daughter.

---

[2] The jury convicted Petitioner of nine of the 11 charges in the criminal information filed against him.  The jury deadlocked on the two remaining counts. (*See* Lodg. No. 10 at 2 n.2; 2CT 442.)

After talking to Beatrice, Officer Doyle went to Petitioner's house in Cherry Valley, California.  When Officer Doyle arrived at Petitioner's house, Petitioner came to the doorway, and Officer Doyle stood on Petitioner's porch and talked to him.  Petitioner voluntarily agreed to talk to Officer Doyle.  The police did not arrest Petitioner at that time.  Petitioner admitted that he had taken some pictures of MG when he was at his brother's house, and Officer Doyle asked if he could look at Petitioner's camera.  However, Petitioner refused to show Officer Doyle his camera, and Officer Doyle then told Petitioner that they would get a search warrant.  Officer Doyle asked Petitioner to sit in a chair on the front porch while they waited for the search warrant to arrive.  (*See, e.g.,* Lodg. No. 10 at 3-4; 1CT at 103-11.)

Early on May 23, 2008, at around 1 a.m., Beaumont Police Officer Saban Hardesty arrived at Petitioner's residence with a first search warrant.  That warrant authorized police to search for cameras and memory cards.  In Petitioner's upstairs office, Officer Hardesty found a camera; but when he turned it on, the camera indicated that there was no memory card in the camera.  Officer Hardesty then saw that a memory card was connected to a nearby computer, and he removed the memory card from the computer and put the card in the camera.  Officer Hardesty then viewed nine photographs of Jane Doe MG on the camera.  (*See, e.g.,* 1CT 113-20; 2 CT 351.)

Based on that first search, Officer Hardesty obtained a second search warrant a couple of hours later, and conducted a second search of Petitioner's residence early that same morning.  The second search warrant authorized police to search for a variety of items, including computers and digital storage devices.  A return to that second search warrant listed numerous items that were seized, including two cellphones, two laptop computers, a computer "tower," and a number of memory cards.  (*See, e.g.,* 1CT 113-20; 2CT 359-65.)

1   The allegations from MG and her mother, and the subsequent searches of

2   Petitioner's home that night, led to the discovery of numerous other victims who

3   accused Petitioner of sex-related crimes, and to the discovery by a Beaumont

4   Police forensics experts of numerous pictures of child pornography on Petitioner's

5   computers and digital devices, some depicting Petitioner's other victims.  (*See,*

6   *e.g.,* 1CT 168-76.)  A number of cases were filed in the Riverside County Superior

7   Court against Petitioner, which were eventually consolidated, and, Petitioner was

8   ultimately charged in one information with eleven counts involving five minor

9   victims.  (*See, e.g.,* 2CT 368-71.)

10   A suppression hearing was held before Petitioner's trial.  (*See* 1RT 12 *et*

11   *seq.*)  At trial, four of Petitioner's victims (that is, Jane Does MG, MC, MW and

12   LC) testified.  (*See* 1 RT 111, 141; 2RT 239, 320.)  Petitioner himself did not

13   testify.  The jury returned their verdicts, convicting Petitioner of crimes concerning

14   each of the four victims who had testified at trial, and the one additional victim

15   who did not testify, Jane Doe KG .  (*See* 2CT 372, 442.)

16   **III.   STANDARD OF REVIEW**

17   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars

18   relitigation in a federal habeas action of any claim that was "adjudicated on the

19   merits" in a state court, subject only to the exceptions set forth at 28 U.S.C.

20   §§ 2254(d)(1) and (d)(2).  *See Harrington v. Richter*, 562 U.S. 86, 98, 131 S. Ct.

21   770, 784, 178 L. Ed. 2d 624 (2011).  Consequently, under AEDPA, this Court may

22   grant federal habeas relief only if a state court's adjudication of a claim was

23   contrary to, or an unreasonable application of, clearly established federal law, or

24   was based upon an unreasonable determination of the facts in light of the record

25   before the state court.  *Richter,* 562 U.S. at 100 (citing 28 U.S.C. § 2254(d)).  A

26   state court's determination that a claim lacks merit precludes federal habeas relief

27   so long as "fairminded jurists" could disagree on the correctness of the state court's

28   decision.  *Richter,* 562 U.S. at 101 (citation and internal punctuation omitted).

"This is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings [] which demands that state-court decisions be given the benefit of the doubt[.]" *Cullen v. Pinholster,* 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (citations and internal punctuation omitted).

A state court's decision is "contrary to" clearly established federal law if: (1) the state court applies a rule that contradicts governing Supreme Court law; or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court but nevertheless arrives at a result that is different from the Supreme Court precedent. *See Lockyer v. Andrade,* 538 U.S. 63, 73, 123 S. Ct. 1166, 1173, 155 L. Ed. 2d 144 (2003) (citing, *inter alia, Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  A state court need not cite or even be aware of the controlling Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

A state court's decision involves an "unreasonable application" of Supreme Court precedent where the state court identifies the correct governing Supreme Court legal rule but unreasonably applies it to the facts of the particular state prisoner's case. *See White v. Woodall,* ___ U.S. ___, 134 S. Ct. 1697, 1705, 188 L. Ed. 2d 698 (2014) (citing, *inter alia, Williams,* 529 U.S. at 407-09).  However, while § 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies Supreme Court precedent, it does not necessarily require a state court to "extend" that precedent, or license federal courts to treat a state court's failure to do so as error. *See White v. Woodall,* 134 S. Ct. at 1706.  Rather, while state courts must reasonably apply the rules "squarely established" by the Supreme Court's holdings to the facts of each case, and § 2254(d)(1) does not require an "identical factual pattern before a legal rule must be applied," relief is available under § 2254(d)(1)'s "unreasonable application" clause "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there

1    could be no 'fairminded disagreement' on the question." *White v. Woodall,* 134 S.

2    Ct. at 1706-07 (quoting *Richter,* 562 U.S. at 103; other citations and internal

3    punctuation omitted).

4         "[Section] 2254(d) does not require a state court to give reasons before its

5    decision can be deemed to have been 'adjudicated on the merits.'" *Richter,* 562

6    U.S. at 100.  Rather, there is a presumption that a claim that has been silently

7    denied by a state court was "adjudicated on the merits" within the meaning of 28

8    U.S.C. § 2254(d), and that AEDPA's deferential standard of review therefore

9    applies, in the absence of any indication or state-law procedural principle to the

10   contrary.  *See Johnson v. Williams,* ___ U.S. ___, 133 S. Ct. 1088, 1094 and n.1,

11   185 L. Ed. 2d 105 (2013) (citing, *inter alia, Richter,* 131 S. Ct. at 784-85 and *Ylst*

12   *v. Nunnemaker,* 501 U.S. 797, 806, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991)).

13   Where a higher state court has silently denied a claim, a federal habeas court

14   "looks through" such a silent denial to the "last reasoned decision" from a lower

15   state court to determine the rationale for the state courts' denials of the claim.  *See*

16   *Cannedy v. Adams,* 706 F.3d 1148, 1156 (9th Cir. 2013) (citing, *inter alia, Ylst,*

17   501 U.S. at 803).

18        Here, Petitioner raised his multiple claims set forth in the Third Amended

19   Petition ("TAP") for Writ of Habeas Corpus in a piecemeal fashion throughout the

20   state courts, resulting in various reasoned decisions on the claims.  Because the

21   California Supreme apparently did not offer any explanation when it denied

22   Petitioner's claims, this Court "looks through" those silent denials to the last

23   reasoned, unpublished opinion from the lower California courts.  *See Ylst,* 501 U.S.

24   at 803; *Cannedy,* 706 F.3d at 1156.

25        The Court notes that Respondent argues that Ground One (and, apparently

26   by extension, Ground Two), Ground Four, and Ground Eight are procedurally

27   barred.  (*See* Answer at 2.)  In the interests of judicial economy, since resolution of

28

the procedural bar issues may be complicated, and since the state courts also considered all of Petitioner's assertedly-barred claims on the merits, the Court will proceed to consider the merits of all of Petitioner's claims here. *See Lambrix v. Singletary,* 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) (court may choose to proceed to merits of habeas petition rather than consider procedural bar); *Franklin v. Johnson,* 290 F.3d 1223, 1232 (9th Cir. 2002) (same).

## IV.   Grounds One and Two:  Ineffective Assistance of Trial Counsel

In Grounds One and Two of the Third Amended Petition, the operative petition in this action, Petitioner argues that his trial counsel was ineffective in connection with a Fourth Amendment search-and-seizure suppression motion and hearing.  Petitioner acknowledges that his trial counsel filed a motion to suppress certain evidence, but claims that counsel failed "to raise all relevant facts and arguments" in that motion.  (*See* Pl. Memo. at 10.)  Petitioner alleges that the police obtained the first search warrant based on an illegal search of his cell phone, that the first search warrant did not authorize the seizure of certain digital evidence, and that law enforcement failed to list seized digital evidence on the return for the first warrant and, instead, wrongfully declared those items on the second warrant's return.  (*Id.*)  Petitioner contends that he was entitled to a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 1254, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), because the police misled the magistrate judge on the warrant return.  (*Id.* at 13.)

### 1.   California Court of Appeal Opinion

Notwithstanding any asserted procedural bar, the California Court of Appeal considered and denied this claim on the merits, stating that the warrants were signed by a judicial officer and "specifically authorized police to search for and seize computers, cellular telephones, memory cards, and other related items. Because property described in a search warrant may be seized [], it would have

1    been futile to move to suppress the seized items on the ground they were obtained

2    by means of an unreasonable search or seizure." (Lodg. No. 24 at 2; citation

3    omitted.)  Accordingly, the appellate court found that Petitioner's trial counsel did

4    not provide ineffective assistance by not making such a meritless motion.  (Lodg.

5    No. 24 at 2.)

6         2.    Applicable Federal Law

7         "[W]here the State has provided an opportunity for full and fair litigation of

8    a Fourth Amendment claim, a state prisoner may not be granted federal habeas

9    corpus relief on the ground that evidence obtained in an unconstitutional search or

10   seizure was introduced at his trial."  *Stone v. Powell,* 428 U.S. 465, 494, 96 S. Ct.

11   3037, 49 L. Ed. 2d 1067 (1976).  Consequently, the relevant inquiry regarding

12   whether a petitioner had a "full and fair" opportunity to litigate a Fourth

13   Amendment claim in the state court is simply whether petitioner had the

14   *opportunity* to litigate the claim, and not whether he *did in fact do so,* or even

15   whether the claim was correctly decided.  *See Ortiz-Sandoval v. Gomez,* 81 F.3d

16   891, 899 (9th Cir. 1996), as amended (May 8, 1996) (emphasis added; citations

17   omitted).

18       Nevertheless, a claim that trial counsel provided ineffective assistance in

19   regard to Fourth Amendment issues may, in certain circumstances, be reviewed in

20   spite of the restrictions announced in *Stone v. Powell.  See Kimmelman v.*

21   *Morrison,* 477 U.S. 365, 368, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)

22   (restrictions announced in *Stone v. Powell* do not necessarily preclude Sixth

23   Amendment ineffective assistance of counsel claim in regard to Fourth

24   Amendment issue).  However, "[w]here defense counsel's failure to litigate a

25   Fourth Amendment claim competently is the principal allegation of

26   ineffectiveness, the defendant must also prove that his Fourth Amendment claim is

27   meritorious *and* that there is a reasonable probability that the verdict would have

28   been different absent the excludable evidence in order to demonstrate actual

prejudice.  *Kimmelman,* 477 U.S. at 375 (emphasis added) (stating that while Fourth Amendment claim is one element of proof of Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values; but finding that attorney's failure to timely move to suppress evidence during trial could be grounds for federal habeas relief).  Consequently, to show a Sixth Amendment violation in regard to a Fourth Amendment claim, a petitioner must satisfy the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984), which requires that (1) counsel's representation was deficient and fell below an objective standard of reasonableness, and (2) but for counsel's deficient and unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different.  *See Kimmelman,* 477 U.S. at 374-75 (citing, *inter alia, Strickland,* 466 U.S. at 686).

Under *Strickland,* a petitioner bears the burden of establishing both deficient performance and prejudice.  *See Williams v. Taylor,* 529 U.S. at 390-91; *Cheney v. Washington,* 614 F.3d 987, 995 (9th Cir. 2010).  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so' . . . ."  *Id.* (citations omitted).  *See also Cullen v. Pinholster,* 563 U.S. at 171 (where AEDPA applies, federal habeas court's review of state court's denial of ineffective assistance of counsel claim is "doubly deferential") (citations omitted).

    3.   <u>Analysis</u>

Respondent argues that, contrary to Petitioner's assertion, there is no indication that any magistrate was misled, or that the police entered Petitioner's residence and conducted a search before obtaining the first search warrant, or searched for and seized any material in excess or violation of the first search warrant (*see* Respondent's Memo. at 6-10).

\\

The Court finds nothing in the record supports Petitioner's conclusory assertions that police illegally seized items before the first warrant issued, or that police illegally seized items that were not authorized by the first warrant before police obtained the second warrant. The Court also finds that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in state court. *Cf., e.g., Neri v. Hornbeak,* 550 F. Supp. 2d 1143, 1155 (C.D. Cal. 2008) (Block, M.J.) (California provides criminal defendants with full and fair opportunity to litigate Fourth Amendment claims through § 1538.5). Furthermore, on the question of ineffective assistance, as the Supreme Court in *Franks* stated, to warrant a *Franks* evidentiary hearing "[t]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks,* 438 U.S. at 171-72. Petitioner has shown no facts or evidence to warrant a *Franks* hearing. Accordingly, Petitioner's counsel could not have been deficient for failing to bring a futile *Franks* hearing motion, and Petitioner suffered no prejudice. *See, e.g., Premo v. Moore,* 562 U.S. 115, 124, 131 S. Ct. 733, 741, 178 L. Ed. 2d 649 (2011) (where state court reasonably deemed motion to suppress futile, counsel cannot be deficient under *Strickland* for failing to bring such futile motion); *James v. Borg,* 24 F.3d 20, 27 (9th Cir. 1994) (counsel not ineffective for failing to raise futile motion) (citations omitted). Habeas relief is not warranted on this claim.

## V.     Ground Three:  Prosecutorial Misconduct, Consultation with Attorney

In Ground Three, Petitioner complains that the prosecution interfered with Petitioner's right to freely consult with his defense counsel, apparently by somehow influencing the Court or jail authorities to not allow Petitioner to have un-monitored visits with defense counsel at the jail where Petitioner was confined before and during trial.  (*See* TAP at 8; Pl. Memo. at 3.)  Petitioner argues that this interference prevented him from informing his counsel about Petitioner's "family

dynamic," where older members "wrestl[ed] and tickl[ed]" younger members, and "his inseparable nature with his camera." (Pl. Memo. at 26.)

Before trial, Petitioner's defense counsel complained to the trial court that the Riverside County Sheriff's Department would not allow counsel to have un-monitored visits with Petitioner in the jail. (*See* 1RT 85-86.) Jail officials apparently told Petitioner's defense counsel that they forbade un-monitored "contact visits" between counsel and Petitioner "for security reasons." (1RT 85.) Defense counsel raised the matter with the Court (1RT 86) and requested that his client be brought to court as early as possible to meet with him in the back row, with a deputy present but not hovering over their meetings. (1RT 86.) The trial court approved defense counsel's request. (*See id.*)

An Order from the California Court of Appeal states, in pertinent part, that "Petitioner does not explain what he would have done differently at trial had he been able to communicate this information to counsel before trial in an unmonitored setting, or how such communication would have affected the jury's verdicts. Petitioner thus has not met his burden to show the alleged denial of the right to counsel resulted in a fundamentally unfair proceeding or an unreliable verdict." (Lodg. No. 18 at 2.)

Here, the state courts' denial of this claim is entitled to deference. Petitioner does not explain why he could not have simply told his counsel about his family background, or about the "inseparable nature" of his relationship to his camera, during the un-monitored meetings that were allowed in the courtroom. Petitioner also does not explain how the proposed evidence would have been admitted at trial unless Petitioner took the stand. Petitioner also apparently imputes the policy of the Riverside County Sheriff's Department, in operating the County Jail, to the prosecution. However, that assertion is also conclusory; Petitioner offers no facts to show that the prosecution was in any way behind any effort to impede

11

Petitioner's communications with defense counsel.  Taken together then, it is clear that habeas relief is not warranted on this claim.

## VI.   Grounds Six and Seven:  Insufficient Evidence to Support Convictions

In Ground Six, Petitioner states that the evidence was constitutionally insufficient to support his conviction for photographing the sexual conduct of the minor Jane Doe MG, in violation of § 311.4(c) (Count 2).  (*See* TAP at 9; Pl. Memo. at 46.)[3]  In Ground Seven, Petitioner complains that there is insufficient evidence of "force or duress" to support his conviction for committing lewd acts with force on the minor Jane Doe MC, in violation of § 288(b)(1) (Count 3.)  (*See* TAP at 9; Pl. Memo. at 3, 49.)

1.   Applicable Federal Law

It is well established that sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original) (citing, *inter alia, In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)).  In applying the *Jackson* standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law at the time that a petitioner committed the crime and was convicted, and look to state law to determine what evidence is necessary to convict on the crime charged.  *See Jackson,* 443 U.S. at 324 n.16; *see also Boyer v. Belleque,* 659 F.3d 957, 965 (9th Cir. 2011) (when assessing sufficiency of evidence claim in habeas petition, court looks to state law to establish elements of crime, then turns to federal question of whether state court was objectively unreasonable in

---

[3] The Court addresses Petitioner's claims in what the Court considers their logical order.  Accordingly, grounds six and seven are discussed before grounds four and five.

1  concluding that evidence was sufficient).

2      Lastly, under AEDPA, federal courts must "apply the standards of *Jackson*

3  with an additional layer of deference." *Juan H. v. Allen,* 408 F.3d 1262, 1274 (9th

4  Cir. 2005); *Boyer,* 659 F.3d at 964 (where *Jackson* claim is "subject to the strictures

5  of AEDPA, there is a double dose of deference that can rarely be surmounted").

6  Even where a state court decision does not cite to or discuss the relevant *Jackson*

7  standard, habeas relief is not warranted "so long as neither the reasoning nor the

8  result of the state-court decision contradicts" Supreme Court precedent. *Juan H.,*

9  408 F.3d at 1275 n.12 (quoting *Early v. Packer,* 537 U.S. 3, 8, 123 S. Ct. 362, 154

10  L. Ed. 2d 263 (2002)).

11      2.   California Court of Appeal Opinion on Ground Six (Count 2)

12      The California Court of Appeal set forth a factual background in denying

13  Petitioner's claim regarding Count 2, describing how Petitioner took multiple

14  photographs of MG, Daniel's eight-year-old daughter, in varying poses.

15           In one, M.G. pulled up her blouse and the photograph is taken

16           from behind her with her buttocks lifted up as she rests on her knees

17           and lies forward on her shoulders.  In another, M.G. is lying on her

18           back with her blouse pulled up and her nipples exposed and her legs

19           are somewhat spread.  The photograph is taken from the front of her.

20           In another, M.G. is on her hands and knees, looking back at the

21           camera.  The orientation of the photograph is from behind M.G.  In

22           the fourth photograph, M.G. is in a similar position as the first

23           photograph, except the photograph is predominantly of M.G.'s

24           buttocks.  In all four photographs, M.G. appears to be smiling at the

25           camera and is clothed in pants and a blouse.  Her blouse, however, is

26           pulled up in three of the four pictures. . . .  M.G. told her parents that

27           Gray made her lift her blouse and took pictures of her. . . . She also

28           told her parents that Gray tickled her and put his hand down her pants.

13

1
2
3

While it is not clear if M.G. told her parents where she was tickled, at trial M.G. testified that Gray had tickled her "rear end. M.G.'s mother reported the incident to the police.

4  (Lodg. No. 10 at 3-4.)

5  The California Court of Appeal also noted the following facts in regard to

6  Petitioner's defense to the charge:  Officer Liam Doyle testified that he responded

7  to the report made by MG against Gray.  MG did not say that Gray had tickled her

8  or inappropriately touched her.  Daniel told Doyle that he did not see anything

9  inappropriate happen between MG and Gray.  Further, during MG's forensic

10  interview, MG did not say that Gray had tickled her or inappropriately touched her.

11  (Lodg. No. 10 at 5.)

12  The appellate court then went on to note that § 311.4(c) provides, in relevant

13  part, as follows:

14
15
16
17
18
19
20
21
22
23
24

Every person who, with knowledge that a person is a minor under the age of 18 years, or who, while in possession of any facts on the basis of which he or she should reasonably know that the person is a minor under the age of 18 years, knowingly promotes, employs, uses, persuades, induces, or coerces a minor under the age of 18 years . . . to engage in or assist others to engage in either posing or modeling alone or with others for purposes of preparing any . . . image, including, but not limited to, any . . . photograph . . . that contains or incorporates in any manner, any film, filmstrip, or a live performance involving, sexual conduct by a minor under the age of 18 years . . . is guilty of a felony.

25  (Lodg. No. 10 at 6-7.)

26  The appellate court noted further that in § 311.4(d)(1), "sexual conduct" is

27  defined as follows:

28  \\

[A]ny of the following, whether actual or simulated:  sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd or lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, any lewd or lascivious sexual act as defined in Section 288, or excretory functions performed in a lewd or lascivious manner, whether or not any of the above conduct is performed alone or between members of the same or opposite sex or between humans and animals. An act is simulated when it gives the appearance of being sexual conduct.

(Lodg. No. 10 at 7.)

The appellate court then denied the claim, relying principally on the case of *People v. Kongs,*  30 Cal. App. 4th 1741 (1994).  (*See* Lodg. No. 10 at 7-9.)  The appellate court noted that *Kongs* set forth "a list of factors to consider in determining whether an image is intended to stimulate a viewer by emphasizing a child's genitals, pubic, or rectal area," which the appellate court quoted as follows:

1) whether the focal point is on the child's genitalia or pubic area; [¶] 2) whether the setting is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; [¶] 3) whether the child is in an unnatural pose, or in inappropriate attire, considering the age of the child; [¶] 4) whether the child is fully or partially clothed, or nude; [¶] 5) whether the child's conduct suggests sexual coyness or a willingness to engage in sexual activity; [¶] 6) whether the conduct is intended or designed to elicit a sexual response in the viewer.

(Lodg. No. 10 at 7; bracketed material in original.)  The appellate court noted that *Kongs* stated that "[w]ith the exception of factor No. 6, which is a required element of a violation of Penal Code section 311. 4, a trier of fact need not find that all of

the first five factors are present to conclude that there was a prohibited exhibition of the genitals or pubic or rectal area: the determination must be made based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age."  (Lodg. No. 10 at 7-8, quoting *Kongs,* 30 Cal. App. 4th at 1755.)

The appellate court observed that *Kongs* itself included a citation to *United States v. Dost,* 636 F. Supp. 828, 832 (S.D. Cal. 1986), *affirmed sub nom. United States v. Weigand,* 812 F.2d 1239 (9th Cir. 1987).  (Lodg. No. 10 at 7, citing *Kongs,* 30 Cal. App. 4th at 1755 (citing *Dost*).)  In regard to *Dost,* the appellate court noted that other California courts had found that consideration of the six factors set forth in *Dost* (and that *Dost* listed as pertinent to an analysis of whether a visual depiction of a minor constitutes "a lascivious exhibition of the genitals or pubic area") was "not mandatory under section 311.4," and that in considering a sufficiency challenge in this context, a reviewing court must determine, "based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age, that the photograph depicts an exhibition of the genitals for the purpose of sexual stimulation of the viewer."  (Lodg. No. 10 at 8, citing *People v. Spurlock,* 114 Cal. App. 4th 1122, 1133 (2003) (internal punctuation omitted).)[4]  The appellate court noted that "[t]he court in *Spurlock* also stated that in determining whether particular images constitute evidence of a

---

[4]  *Dost* set forth six factors for a court to consider "in determining whether a visual depiction of a minor constitutes a 'lascivious exhibit of the genitals or pubic area'" as required for a violation of § 2255(2)(E) of the federal Child Protection Act of 1984.  The *Dost* factors are almost identical to the factors cited in *Kongs*. *See Dost,* 636 F. Supp. at 832.  *Dost* also states that "a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.'  The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor."  *Id.*

section 311.4 violation, '[n]udity is not sufficient, but it is also not strictly necessary,' . . . [and w]hether a particular display is an illicit exhibition is a more complicated inquiry than simply asking whether the genitals are exposed. Photographs showing a partially clad pubic area may well be intended to elicit a sexual response on the part of the viewer." (Lodg. No. 10 at 8, citing *Spurlock, id.*)

In denying the claim, the California Court of Appeal went on to state as follows:

> Against this legal backdrop, we conclude the four photographs constitute substantial evidence supporting Gray's conviction under count 2. One of the pictures shows M.G. lying on her back on the floor with her legs spread and her blouse lifted, exposing her chest. We determine this pose is sexual in nature and is not natural for a child of M.G.'s age. In addition, multiple pictures have M.G. on her hands and knees or on her stomach with her buttocks lifted in the air with the orientation of the photograph from behind M.G. These pictures are extremely sexually suggestive. Although M.G. is mostly clothed, her pose is something that would more likely be found in a pornographic magazine then a family photo album. Indeed, one photograph entirely focuses on M.G.'s buttocks. [¶] Despite the nature of these photographs, Gray argues they are not sexual in nature because they do not depict masturbation, bestiality, sexual sadism, sexual masochism, or penetration of the vagina or rectum. Gray claims the photographs do not show M.G. engaged in sexual conduct because they do not involve M.G. in actual or simulated sexual intercourse, oral copulation, or anal intercourse. He also asserts the photographs do not show the genitals, rectal area, or excretory functions performed in a lewd or lascivious manner. We are not persuaded. [¶] Gray's arguments ignore the overall content and

17

context of the photographs.  M.G. was only eight years old at the time.
Gray had her pose in certain positions and required her to lift her
blouse.  These poses were sexually provocative, and Gray
orchestrated them.  Substantial evidence thus supports the jury's
finding that Gray violated section 311.4.

(Lodg. No. 10 at 8-9.)

       3.    <u>Petitioner's Contentions, Analysis of Count 2 Conviction</u>

In support of Ground Six, Petitioner contends that the evidence did not
satisfy § 311.4(c) because the photographs did not reflect "sexual conduct."  (*See*
Pl. Memo. at 46.)  Petitioner cites California cases for the proposition that the
photographs do not show "actual or simulated sexual intercourse, oral copulation,
anal intercourse or anal oral copulation . . . masturbation, bestiality, sexual sadism,
sexual masochism, [or] penetration of the vagina or rectum by any object in a lewd
or lascivious manner [and t]here is no exhibit of the genitals or pubic or rectal area
nor any lewd or lascivious sexual act . . . or excretory function performed in a lewd
or lascivious manner."  (Pl. Memo. at 46.)  Petitioner further argues that the
photographs do not focus on the genitalia, are not in a sexually suggestive setting,
and the minor depicted in the photographs is not inappropriately posed and is fully
clothed in age-appropriate clothing.  (Pl. Memo. at 46.)

The Court finds that Petitioner's claim does not warrant habeas relief.  First,
it is generally not the province of a federal habeas court to question a state court's
interpretation of its own state law unless there is some compelling reason to do so.
The Supreme Court has "repeatedly held that a state court's interpretation of state
law, including one announced on direct appeal of the challenged conviction, binds
a federal court sitting in habeas corpus."  *Bradshaw v. Richey,* 546 U.S. 74, 76, 126
S. Ct. 602, 163 L .Ed. 2d 407 (2005) (citing *Estelle v. McGuire,* 502 U.S. 62, 67-
68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  Consequently, the California Court
of Appeal's conclusions about what constitutes the "legal backdrop" to the state

law definitions of "sexual conduct," or "lewd and lascivious manner," or "whether an image is intended to stimulate a viewer by emphasizing a child's genitals, pubic, or rectal area" will not be questioned here.[5]

While the state appellate court referred to the elements of § 311.4(c), it did not explicitly set out what each of those elements were.  This Court's review reveals that CALCRIM 1144 is a correct statement of California law on the elements of Section 311.4.  That instruction states, in pertinent part, that the elements of the crime require that:  (1) the defendant employed or persuaded or induced or coerced a minor who was under 18 years old at the time to pose or model; (2) the defendant knew that he was employing or persuading or inducing or coercing a minor of that age to pose or model; (3) the purpose of the posing or modeling was to prepare matter containing or incorporating sexual conduct; (4) the minor participated in the sexual conduct alone; (5) the defendant was aware of the character of the matter or live conduct; and (6) the defendant knew, or reasonably should have known, based on facts of which he was aware, that the minor was under 18 years of age.  (*See* CALCRIM 1144; *People v. Haraszewski,* 203 Cal. App. 4th 924, 935, 137 Cal. Rptr. 3d 641, 648 (2012) (discussing CALCRIM 114 and elements of Section 311.4(c)).

The state courts' determination that the evidence was sufficient to satisfy the elements of § 311.4(c) was not contrary to, nor an unreasonable application of, the federal *Jackson* standard.  In particular, the state appellate court noted that one of

---

[5] Moreover, as the state appellate court noted, there is no significant conflict between the standards set forth in such California cases as *Kongs* and *Spurlock,* which state that whether a photograph contains a prohibited exhibition of the genitals or pubic or rectal area "for the purpose of sexual stimulation of the viewer" is a determination that must be made "based on the overall content of the visual depiction and the context of the child's conduct, taking into account the child's age," and federal law, such as the standards set forth in *Dost.  See* Lodg. No. 10 at 5-8, citing *Kongs,* 30 Cal. App. 4th at 1755, and *Spurlock,* 114 Cal. App. 4th at 133.

the pictures of MG showed her "lying on her back on the floor with her legs spread and her blouse lifted, exposing her chest"; and "multiple" other pictures showed her "on her hands and knees or on her stomach with her buttocks lifted in the air with the orientation of the photograph from behind MG"  The state appellate court then reasonably found that these pictures were "sexually suggestive," and noted, in particular, that although M.G. was "mostly clothed," the images were like photos from a pornographic magazine, and one photo "entirely focuses on M.G.'s buttocks." (*See* Lodg. No. 10 at 8-9.)  Given these facts, it is clear that a rational juror could have found the essential elements of § 311.4(c) were satisfied beyond a reasonable doubt; and accordingly, no violation of the *Jackson* standard occurred here. *See Jackson,* 443 U.S. at 319 (emphasis in original).  *See also, e.g., Casey v. Martel,* No. SA CV 09-370-ODW PLA, 2010 WL 4272896, at *11 (C.D. Cal. Oct. 4, 2010) (Abrams, M.J.) (discussing *People v. Kongs*; finding that § 311.4(c) was not unconstitutionally vague; and denying habeas claim that evidence was insufficient to satisfy elements of § 311.4(c)).

    4.   California Court of Appeal Opinion on Ground Seven (Count 3)

Petitioner's Ground Seven concerns his conviction on Count 3, for the violation of § 288(b)(1), concerning the lewd and lascivious act that he committed on Jane Doe MC.  The California Court of Appeal set forth a factual background in denying Petitioner's claim regarding Count 3:

> M.C., Daniel's niece, went to Daniel's house for Thanksgiving dinner when she was seven years old.  Gray [Petitioner] also was there.  At some point that night, Gray and M.C. were in a bedroom, and Gray asked M.C. to come over to see him.  She complied, and then Gray picked her up and put her on his lap.  While M.C. was sitting on his lap, Gray kissed her on the mouth.  M.C. was very uncomfortable and tried to get off Gray's lap.  Gray told M.C. not to tell her parents what he had done.  Gray's instruction scared M.C.

1   After M.C. was able to get off Gray's lap, Gray grabbed her
2   hand and "pulled" her to a more secluded area of the room, near the
3   closet.  He grabbed her under her arms and laid her down on the
4   ground on her back.  Gray kneeled down at M.C.'s feet and bent over
5   her.  He then grabbed the bottom of her shorts and pulled them down
6   to the middle of her thighs, exposing her underwear.  M.C. kicked
7   Gray.  M.C.'s brother and cousin walked over and Gray let go.  Gray
8   picked M.C. up from the floor, and M.C. pulled up her shorts.  Gray
9   then grabbed her hand and started to walk, but M.C. pulled her hand
10   away and left the room.

11   M.C. did not initially tell her parents what Gray had done
12   because she was scared of what Gray would do if she told them.  On
13   another occasion after Thanksgiving, Gray put his hand on M.C.'s hip
14   and squeezed it, making M.C. very uncomfortable.

15   M.G.'s mother called M.C.'s father and told him about the
16   incident between M.G. and Gray.  After being prodded by her parents,
17   M.C. told her parents what Gray had done to her.

18   M.C. was subsequently interviewed by child protective
19   services.  M.C. told the interviewer that on Thanksgiving, Gray tried
20   to kiss her on the mouth and tried to pull down her shorts.  M.C. also
21   told the interviewer that Gray sometimes put his hand on her leg when
22   she was wearing skirts and would squeeze her leg.

23   (Lodg. No. 10 at 4-5.)

24   The state appellate court denied this claim, stating that the elements of an
25   offense under § 288(b) "are:  (1) physical touching of a child under age 14; (2) for
26   the present and immediate purpose of sexually arousing or gratifying the defendant
27   or the victim; and (3) the touching was accomplished by use of force, violence,
28   duress, menace, or fear of injury."  (Lodg. No. 10 at 10, citing *People v. Alvarez,*

27 Cal. 4th 1161, 1171 (2002).)  The appellate court stated that "[f]orce, in this context, means physical force that is 'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.'"  (Lodg. No. 10 at 10, quoting *People v. Cochran,* 103 Cal. App. 4th 8, 13 (2002).)

The appellate court rejected reasoning from other California state appellate courts which held that "ordinary lewd touching" must involve "some additional physical contact" in addition to "a modicum of holding and even restraining," or that there must be some evidence "of any struggle, however brief."   (Lodg. No. 10 at 10-11, quoting *People v. Schulz,* 2 Cal. App. 4th 999 (1992) and *People v. Senior,* 3 Cal. App. 4th 765 (1992).)  Rather, the appellate court here noted that other California appellate courts had rejected the analyses in *Schulz* and *Senior*. (Lodg. No. 10 at 11, citing *People v. Alvarez,* 178 Cal. App. 4th 999, 1004 (2009) (rejecting *Schulz*); *People v. Bolander,* 23 Cal. App. 4th 155, 160–161 (1994); *People v. Neel,* 19 Cal. App. 4th 1784, 1790 (1993); and *People v. Babcock,* 14 Cal. App. 4th 383, 388 (1993).)

Consequently, the appellate court found that "sufficient evidence of force supports the jury's finding."  (Lodg. No. 10 at 11-12, citing *Alvarez, supra,* 178 Cal. App. 4th at 1005 [defendant's resistance of victim's attempts to push him away and holding the victim "hard" and "tight" sufficient evidence of force]; and *Bolander, supra,* 23 Cal. App. 4th at 160–161 ["defendant's acts of overcoming the victim's resistance to having his pants pulled down, bending the victim over, and pulling the victim's waist towards him" constituted forcible lewd conduct].)  In particular, the Court of Appeal cited the following evidence of "force" that satisfied the elements of the crime:

For example, Gray grabbed M.C. under her arms and pulled her onto his lap as he was sitting on the bed.  He then kissed her on the mouth.  After she got off his lap, he grabbed her hand and pulled her over to a more secluded part of the bedroom, near the closet.  There he

1          picked M.C. up and put her down on the floor on her back.  He then

2          knelt down over her and pulled her shorts down.  During this time,

3          M.C. was kicking Gray trying to get him to stop.  After M.C.'s brother

4          and cousin came into the room and Gray allowed M.C. to get up, he

5          attempted to grab her yet again.

6  (Lodg, No. 10 at 11.)

7       Finally, finding substantial evidence of force, the Court of Appeal did not

8  address Petitioner's assertion that there was insufficient evidence of duress to

9  support the conviction.  (Lodg. No. 10 at 12.)

10       5.     Petitioner's Contentions, Analysis of Count 3 Conviction

11       In support of Ground Seven, Petitioner contends that the evidence of "force"

12  or "duress" was insufficient to support his conviction on Count 3.  (*See* Pl. Memo.

13  at 49.)  Petitioner cites a number of California appellate cases for the proposition

14  that "substantially different or excessive force" – that is, force that is different from

15  and substantially greater than the "force" that may be necessary to accomplish the

16  act itself -- is required for a conviction under § 288(b).  (Pl. Memo. at 51-52.)

17  Petitioner also argues that he and Jane Doe M.C. did not have any "parental or

18  quasi-parental" relationship, and she was not in fear of Petitioner, nor was

19  Petitioner in a position of dominance over her.  (*See* Pl. Memo. at 53-54.)

20       Petitioner's legal arguments, about whether the "force" required to satisfy

21  the third element of § 288(b)(1) must be "force" that is different from the "physical

22  touching" set forth in the statute, were squarely and reasonably rejected by the

23  state appellate courts, and, as noted above, this federal habeas court does not

24  review a state court's reasonable interpretation of its own state law.  *See Bradshaw*

25  *v. Richey,* 546 U.S. at 76.  Furthermore, the state court reasonably found that a

26  rational juror could have found that Petitioner's actions satisfied the "force"

27  requirement of § 288(b)(1), since, in particular, Petitioner grabbed and pulled M.C.

28  onto his lap and kissed her on the mouth, and then picked her up and put her down

on the floor on her back, all while she was kicking and trying to get him to stop.  In light of these facts, the Court finds that the state courts' denial of this claim does not contravene the *Jackson* standard.  *See, e.g., Delgado v. McEwen,* No. CV 11-10496-GHK RZ, 2012 WL 7170432, at *11 (C.D. Cal. Oct. 10, 2012) (Zarefsky, M.J.) (analyzing "force" necessary to support Section 288(b)(1) conviction and denying federal habeas relief).  Furthermore, since Section 288(b)(1) allows for conviction based on the use of "force" or "duress" in the alternative, this Court agrees with the state appellate court that it need not consider whether the State made an adequate showing of "duress."  (*See* Lodg. No. 10 at 10.)

## VII.  Ground Four:  Ineffective Appellate Counsel, Count 2 -- P.C. § 311.4(c)

In Ground Four, Petitioner contends that appellate counsel was ineffective for failing to raise on appeal "instructional errors" regarding § 311.4(c), specifically, the instruction on Count 2, the charge that Petitioner induced minor Jane Doe MG to engage in "sexual conduct" in posing for photographs.  (*See* Pl. Memo. at 29 *et seq.*)  Petitioner claims that the instruction on Section 311.4(c), which was specially crafted, was "overbroad and overinclusive" in its definition of the meaning of "sexual conduct," and he claims that the alleged error violated his rights.  (*See* Pl. Memo. at 33, citing 4RT 530 *et seq.*)

On habeas review, the California Supreme Court denied this claim, apparently without comment or citation to authority.  (*See* Lodg. 21.)  Looking through that silent denial reveals an underlying Order from the California Court of Appeal on the issue of whether the trial court's instructions on Sections 311.4(c) and (d)(1) correctly defined "sexual conduct" as set forth in the statute.  (*See* Lodg. No. 18 at 1-2.)  In denying that instructional error claim, the state appellate court stated that "[t]he list of factors given the jury to consider in deciding whether there was an 'exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer [pursuant to Section § 311.4(d)(1)] has been repeatedly approved by the [California] courts." (Lodg. No. 18 at 2, citing *In re Ulysses D.,*

121 Cal. App. 4th 1092, 1096 (2004); *People v. Spurlock,* 114 Cal. App. 4th 1122, 1131, fn. 4 (2003); and *People v. Kongs,* 30 Cal. App. 4th 1741, 1754-55 (1994).)

As noted above, to prevail on a claim of ineffective assistance of counsel, a federal habeas petitioner must satisfy the standards set forth in *Strickland v. Washington;* and the *Strickland* standards are also applicable to claims that appellate counsel was ineffective for failing to raise issues on appeal. *See Evitts v. Lucey,* 469 U.S. 387, 391–97, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985); *Hurles v. Ryan,* 752 F.3d 768, 785 (9th Cir. 2014) (citation omitted). An appellate counsel is not ineffective for failing to raise a futile or meritless issue on appeal. *See Turner v. Calderon,* 281 F.3d 851, 872 (9th Cir. 2002) (failure to raise untenable issues on appeal does not fall below *Strickland* standard) (citing *Featherstone v. Estelle,* 948 F.2d 1497, 1507(9th Cir.1991)). Since the state courts denied this claim on the merits, review here is "doubly deferential" under the AEDPA and *Strickland* standards. *See Richter,* 131 S. Ct. at 788; *Cullen v. Pinholster*, 131 S. Ct. at 1403.

As also noted above, federal habeas corpus relief also does not lie for errors of state law; and a claim that a state court failed to follow its own state law in regard to jury instructions given at trial does not necessarily invoke a federal constitutional question. *Estelle,* 502 U.S. at 67-68. In order to warrant federal habeas relief, a challenged jury instruction, or omitted or ambiguous instruction, must violate due process to the extent that it so infected the entire trial that it rendered the resulting conviction "fundamentally unfair." *Estelle,* 502 U.S. at 67, 71-73; *McKinney v. Rees,* 993 F.2d 1378, 1379-80 (9th Cir. 1993) (discussing *Estelle*).

This Court finds that the state courts' denial of this claim is entitled to deference. The evidence was sufficient to support Petitioner's conviction on Section 311.4(c); and, as the California Court of Appeal explained, *People v. Kongs* justified the conclusion that the evidence of "sexual conduct" was sufficient to support the conviction. Here, it must logically follow that the jury instruction on

this charge, based as it was on *Kongs,* was a correct statement of California law; and the jury instruction as given conforms to the state appellate court's reading of the law. [6]   Accordingly, any challenge by appellate counsel to the instruction would have been futile, and therefore appellate counsel's assistance was not constitutionally ineffective.   *See, e.g., Casey v. Martel,* No. SA CV 09-370-ODW PLA, 2010 WL 4272896, at *11 (finding that California state courts' interpretation of meaning of "sexual conduct" in connection with Section 311.4(c) and in light of *People v. Kongs* was entitled to deference).

## VIII.   Ground Five:   Ineffective Appellate Counsel, Count 7 - P.C. § 311.11(a)

In Ground Five, Petitioner asserts that appellate counsel was ineffective for failing to raise an issue of "instructional error" on appeal regarding Petitioner's conviction for violating § 311.11(a), that is, the instruction on Count 7 for possession of photographs depicting the "sexual conduct" of a minor under 18 years old.   (*See* Pl. Memo. at 3, 40.)   Petitioner presents the same arguments that he presented above in regard to his claim in Ground Four (on Count 2),

---

[6] The trial court ultimately gave the jury the following pertinent instruction (essentially the legal language regarding "sexual conduct" which the California Court of Appeal referenced above):

> Sexual conduct means actual or simulated sexual intercourse, oral copulation, anal intercourse, anal oral copulation, masturbation, bestiality, sexual sadism, sexual masochism, penetration of the vagina or rectum by any object in a lewd and lascivious manner, exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer, or any touching of a child's body either on the bare skin or through the clothing either by the defendant, someone else, or by the child themselves for the purpose of sexual stimulation of the viewer.   An act is stimulated [sic] when it gives the appearance of being sexual conduct.

(4RT 639-40.)

essentially arguing again that the "sexual conduct" required for the offense was ill-defined.  (*See* Pl. Memo. at 40.)

Petitioner presented this claim to the state courts in habeas petitions to the California Court of Appeal (Lodg. No. 17) and the California Supreme Court (Lodg. No. 21).  The Court of Appeal stated that "[Petitioner's] claims of instructional error . . . have no merit.  The list of factors given the jury to consider in deciding whether there was an 'exhibition of the genitals or pubic or rectal area for the purpose of sexual stimulation of the viewer' ([] § 311.4, subd. (d)(1) has been repeatedly approved by the courts."  (Lodg. No. 18 at 2.)

This Court finds that the state courts' denial of this claim is entitled to deference.  As discussed above, "sexual conduct" as defined to the jury comported with California law and, in particular, *People v. Kongs*; and the jury instruction as given conforms to the state appellate court's reading of the law.  Accordingly, any challenge by appellate counsel to the instruction would have been futile, and therefore appellate counsel's assistance was not constitutionally ineffective.  *Cf., e.g., Shoemaker v. Taylor,* 730 F.3d 778, 785 (9th Cir. 2013) (considering conviction under § 311.11, analyzing *Dost* factors, and denying habeas relief); *Imbach v. Clark,* No. ED CV 09-1957-GW PLA, 2012 WL 3206670, at *31 (C.D. Cal. Jan. 10, 2012)  (Abrams, M.J.) (considering conviction under § 311.11 and denying habeas relief).

## IX.   **Ground Eight:  Sentence as Cruel and Unusual Punishment**

In Ground Eight, Petitioner asserts that the three consecutive sentences imposed by the trial court constitute cruel and unusual punishment in violation of Petitioner's rights under Eighth and Fourteenth Amendments.  (TAP at 9; Pl. Memo. at 3, 58-61.)

In denying this claim, the state appellate court stated simply, "[Petitioner's] claim that his three consecutive prison sentences of 15 years to life . . . violate the federal constitutional prohibition against cruel and unusual punishment (U.S.

Const., 8th Amend.) . . . also has no merit."  (Lodg. No. 18 at 2-3, citations omitted.)

The Eighth Amendment prohibits "extreme" sentences that are "grossly disproportionate" to the severity of the crime.  *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991)(citation and internal quotation marks omitted); *Nunes v. Ramirez-Palmer,* 485 F.3d 432, 439 (9th Cir. 2007) ("gross disproportionality principle" is clearly established federal law under AEDPA for purpose of analyzing whether sentence constitutes cruel and unusual punishment).  However, the precise contours of the "gross disproportionality principle" have been called "unclear," and the Supreme Court and the Ninth Circuit have noted that the principle is applicable only in the "exceedingly rare" and "extreme" case.  *See Gonzalez v. Duncan,* 551 F.3d 875, 879-80 (9th Cir. 2008) (quoting *Lockyer v. Andrade,* 538 U.S. 63, 72-73, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

The Ninth Circuit has consistently found that a trial court's imposition of consecutive rather than concurrent sentences is beyond the scope of federal habeas review.  *See Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus.").  The California Supreme Court has held that "imposition of consecutive terms under California Penal Code section 669 does not implicate a defendant's Sixth Amendment rights." *Id.* at 821, 62 Cal. Rptr. 3d 569, 161 P.3d 1130 (reaffirming earlier holding in *Black I,* after *Cunningham v. California,* 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007) ("*Cunningham* . . . does not undermine our previous conclusion that imposition of consecutive terms under [P.C.] section 669 does not implicate a defendant's Sixth Amendment rights.").

Here, this Court finds that the state courts' denial of this claim was not contrary to, nor an unreasonable application of, clearly established federal law. Petitioner sexually molested five young girls, and he had apparently been

28

committing such crimes over the period of a decade.  (*See* 4RT 686-87.)  The state

trial court's exercise of its discretion to impose Petitioner's sentences

consecutively under state law does not offend the Constitution, or the Eighth

Amendment, or warrant federal habeas relief here.  *See, e.g., Lockyer,* 538 U.S. at

77 (two consecutive twenty-five years to life sentences with the possibility of

parole did not amount to cruel and unusual punishment); *Chan v. Martel,* No.

CV0804810 R (SS), 2009 WL 1445898 (C.D. Cal. May 20, 2009) (Segal, M.J.)

(sentence of ten consecutive indeterminate prison terms of 50 years to life was not

grossly disproportionate for defendant convicted of ten counts of committing a

forcible lewd act upon a child, and thus sentence was not unconstitutionally cruel

and unusual).

## X.   CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Judge issue an

order: (1) accepting the findings and recommendations in this Report; (2) directing

that judgment be entered denying the Third Amended Petition; and (3) dismissing

this action with prejudice.

DATED: November 23, 2015     _____

HON. ROZELLA A. OLIVER
UNITED STATE MAGISTRATE JUDGE

### NOTICE

Reports and Recommendations are not appealable to the Court of Appeals,

but may be subject to the right of any party to file objections as provided in Local

Civil Rule 72 and review by the District Judge whose initials appear in the docket

number.  No Notice of Appeal pursuant to the Federal Rules of Appellate

Procedure should be filed until entry of the Judgment of the District Court.